IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–00739–PAB–KMT

GABRIEL L. FLORES,

    Plaintiff,

v.

"R.N." MRS. AMY FRIEND,
DR. MORGAN, Mental Health,
MRS. RANAE MARTINEZ, "Director of Medical", and

    Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**

This case involves claims that Defendants violated Plaintiff's rights under the Eighth Amendment. This case comes before the court on Defendant Morgan and Defendant Martinez's "Motion to Dismiss Plaintiff's Complaint (Doc. 4)" ([Doc. No. 25] [filed July 20, 2009] [hereinafter "M & M Mot."]), and the "Motion to Dismiss Plaintiff's Complaint (Doc. 4) on Behalf of Defendant Amy Friend" ([Doc. No. 30] [filed September 23, 2009] [hereinafter "Friend Mot."]). Plaintiff filed his Response to Defendant Friend's Motion on November 19,

2009. ([Doc. No. 38] [hereinafter "Resp."].) Jurisdiction is premised upon 42 U.S.C. § 1983 (2009).[1] These motions are ripe for review and recommendation.

## STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Amended Prisoner Complaint ([Doc. No. 4] [filed April 13, 2009] [hereinafter "Compl."]) and the parties' submissions with respect to this Recommendation. Plaintiff Gabriel Flores (hereinafter "Plaintiff" or "Flores"), is an inmate currently incarcerated at the Colorado State Penitentiary within the Colorado Department of Corrections (hereinafter "CDOC"). (Compl. at 2.) Plaintiff's claims arise out of allegedly inadequate medical treatment he received for an allergic reaction between July 23, 2007 and July 27, 2007 while he was housed at the Fremont Correctional Facility (hereinafter "FCF"). (*Id.*)

Plaintiff states he first noticed his symptoms on July 23, 2007, but that he did not request medical attention until July 25, 2007 when he had a "sever [sic] alergic [sic] reaction." (*Id.* at 4.) Plaintiff claims his throat itched, and that he had hives on his face, chest, and arms that itched and burned so much he had trouble sleeping. (*Id.*) Plaintiff states he saw Defendant Amy Friend (hereinafter "Friend"), a "responding nurse" at FCF, on July 25, 2007. (*Id.* at 2, 4.) Plaintiff alleges Defendant Friend diagnosed his condition as a minor rash which she did not consider an

---

[1] Plaintiff also asserts jurisdiction pursuant to Colo. Rev. Stat. § 24-10-109. (Compl. at 3.) Colo. Rev. Stat. § 24-10-109(1), a provision of the Colorado Governmental Immunity Act, "requires a person claiming to have suffered an injury by a public entity to file written notice within 180 days after the discovery of the injury." *Trinity Broadcasting of Denver, Inc. v. Westminster,* 848 P.2d 916, 923 (Colo. 1993). This statute acts as a jurisdictional bar to tort claims against Colorado state entities and employees. *Id.* It does not itself confer federal jurisdiction.

emergency. (*Id.* at 4.) Flores states that Defendant Friend directed "I should not go back untill [sic] my throat closes or I could no longer breath [sic]." (*Id.*) According to Plaintiff, on July 26, 2007, he returned to the medical department because he had been unable to sleep the night prior due to his symptoms. (*Id.*) Plaintiff claims that, by this time, his hives had spread, he had severe itching and burning, and that his breathing was becoming more difficult. (*Id.*) Flores states that when Defendant Friend noticed he had returned, Friend told an unnamed nurse that she would not see Flores because there was nothing wrong with him. (*Id.*) Plaintiff claims the unnamed nurse did attend to him, checking his vital signs and providing him with benadryl before sending him away. (*Id.*) In Claim One, Plaintiff alleges Defendant Friend exhibited extreme medical indifference and gross medical neglect. (*Id.* at 3.)

Plaintiff alleges that on July 27, 2007, he again went to the medical unit for treatment of his symptoms but also met with "mental health doctor" Defendant Mrs. Morgan (hereinafter "Morgan"). (*Id.* at 2, 5.) Defendant Morgan allegedly asked Plaintiff, "What did you do to yourself Mr. Flores?" (*Id.* at 5.) Plaintiff states that at the time of his meeting with Defendant Morgan, he had not slept for three consecutive nights and had taken pain and sleep medications. (*Id.* at 5.) Flores states he informed Defendant Morgan that he did not feel it was a good time to meet because he was not "in the right state of mind to understand what was going on." (*Id.*) Flores states he thereafter returned to his bed in the medical unit. (*Id.*)

Later the same day, Plaintiff states that Defendant Renae Martinez (hereinafter "Martinez"), Director of the FCF Medical Department, visited him to "see what was wrong with [him]." (*Id.* at 2, 6.) Plaintiff states that when Defendant Martinez arrived he had recently

received a cortazone shot for his allergic reaction, and had taken pain and sleep medications. (*Id*. at 6.) Plaintiff states he was "half asleep" when Defendant Martinez approached him and that he refused to talk to her until he was "in a better state of mind." (*Id*.) Sometime thereafter, Plaintiff claims Defendants Morgan and Martinez and three correctional officers approached him and said "they [were] going to get [him] help." (*Id*. at 5.) Plaintiff maintains he was handcuffed and taken to Territorial Correctional Facility (hereinafter "TCF") "for proper [medical] care," where he was placed in the segregation unit, on suicide watch for 24 hours. (*Id*. at 3–5.)

After arriving at TCF, Plaintiff claims officials took a blood sample and "came to the conclusion that it was an alergic [sic] reaction to food." (*Id*. at 6.) Plaintiff asserts he was also given a physical evaluation and medication while at TCF. (*Id*. at 5.) Plaintiff claims he later discontinued this medication because it made him sick and "never helped." (*Id*. at 5–6.) Plaintiff states he was asked how many times he had attempted to hurt himself and why he had done so. (*Id*. at 5.)

In Claim Two, Plaintiff alleges Defendant Morgan is responsible "for her role that landed [him] on suicide watch." (*Id*. at 3.) Plaintiff alleges that when he was still at FCF, Defendant Morgan "never looked into [his] condition" because she assumed he had done something to himself. (*Id*. at 5.) Plaintiff alleges he was not properly treated for his allergic reaction, and that his placement in segregation and on suicide watch at TCF constituted punishment that has had a lasting effect on him. (*Id*. at 3, 5.)

In Claim Three, Plaintiff alleges Defendant Martinez made the final decision to send him to TCF and therefore, "is liable under the theory of respondeat superior." (*Id*. at 3, 6.)

On May 18, 2009, Senior District Judge Zita L. Weinshienk dismissed Plaintiff's Claim Four, against the CDOC pursuant to 28 U.S.C § 1915A(b)(2), finding the CDOC was entitled to Eleventh Amendment immunity.  (Doc. No. 8 at 3.)

Plaintiff does not indicate in any of his claims what constitutional right he believes Defendants Friend, Morgan, or Martinez violated.  In light of this court's duty to review *pro se* pleadings liberally, *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007), the court construes the Complaint as asserting claims for deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." (citation omitted)).  Further, Plaintiff does not specify what relief he requests in the Complaint, though in the Response he states that he seeks damages in the amount of $50,000.  (Resp. at 5.)

Defendants Friend, Morgan, and Martinez move to dismiss on the following grounds: 1) Defendants are entitled to Eleventh Amendment immunity in their official capacities; 2) Plaintiff has failed to allege that Defendant Martinez personally participated in any misconduct; 3) Plaintiff has failed to state a claim for violation of the Eighth Amendment; and 4) Defendants are entitled to qualified immunity in their individual capacities.

## STANDARD OF REVIEW

### 1.     **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell*, 472 F.3d at 1243 (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. N.M.*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## *2.  Fed. R. Civ. P. 12(b)(6) - Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1006, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court "need not accept conclusory allegations without supporting factual averments." *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1940.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## ANALYSIS

### I.     *Eleventh Amendment Immunity*

Plaintiff does not designate the capacity in which each Defendant is being sued or make any claim for declaratory or injunctive relief. (Compl. at 8.) In light of Plaintiff's allegations, the court construes the Complaint as asserting claims against all Defendants in their individual and official capacities. *See Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993) ("where the complaint fails to specify the capacity in which the government official is sued, we look to the substance of the pleadings and the course of the proceedings in order to determine whether the suit is for individual or official liability").

Section 1983 imposes civil liability upon any "person" who subjects another to a constitutional deprivation. 42 U.S.C. § 1983. Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for every such litigant. A claim for relief against the state itself, or a state agency, is barred by the Eleventh Amendment. *Ala. v. Pugh*, 438 U.S. 781, 782 (1978); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).

It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994).

Defendants Friend, Morgan, and Martinez were employed by the CDOC at the time the incidents upon which Plaintiff's Complaint is based occurred. (M & M Mot. at 4; Friend Mot. at 5.) Therefore, Plaintiff's official-capacity claims against Defendants Friend, Morgan, and Martinez constitute claims against the Colorado Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). The State of Colorado has not waived its Eleventh Amendment immunity, *see Griess v. Colo.*, 841 F.2d 1042, 1044–45 (10th Cir. 1988), and congressional enactment of 42 U.S.C. § 1983 did not abrogate Eleventh Amendment immunity, *see Quern v. Jordan*, 440 U.S. 332, 340–45 (1979). Therefore, Plaintiff's official-capacity claims against Defendants Friend, Morgan, and Martinez are barred by the Eleventh Amendment. *See id.; Bennett*, 17 F.3d at 1267.

## II.     *Personal Participation*

Personal participation is an essential allegation in a section 1983 civil rights action. *Bennett v. Passic*, 545 F.2d 1260, 1262–63. To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right. *Ky. v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1948 (2009).

"Courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her, and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Plaintiff has failed to show that Defendant Martinez personally participated in any misconduct. The sole factual statement concerning Defendant Martinez is that she came to the medical unit on July 27, 2007 "to see what was wrong with [Plaintiff]," but Plaintiff refused to talk to her. (Compl. at 6.) Furthermore, to the extent Plaintiff claims Defendant Martinez is responsible for the allegedly inadequate treatment he received under a theory of respondeat superior, "[a] defendant cannot be liable under a respondeat superior theory in a section 1983 case." *Raile v. Ortiz*, No. 05-1345, 2006 WL 991102, at *2 (10th Cir. Apr. 17, 2006) (citing *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983)). *See also Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (supervisor status insufficient by itself to support liability under section 1983; rather, personal participation of defendant is essential).

Therefore, all claims against Defendant Martinez, in any capacity, should be dismissed.

### III.   *Eighth Amendment Deliberate Indifference*

Prison officials violate the Eighth Amendment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104 (internal quotation marks omitted). "[A] prisoner must allege acts or omissions

sufficiently harmful to evidence deliberate indifference to serious medical needs." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle*, 429 U.S. at 106). The test for deliberate indifference involves both an objective and a subjective component. *Sealock v. Colo.*, 218 F.3d 1205, 1209 (2000). The objective component requires that the "deprivation alleged must be, objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) (internal quotation marks omitted).

      The subjective component of the deliberate indifference test is met if a defendant "knows of and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at 1209. To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 833. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "The subjective component is akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Self*, 439 F.3d at 1231 (quotation marks omitted) (citing *Farmer*, 511 U.S. at 837, 839).

      With regard to Claim One against Defendant Friend, Plaintiff states that while at FCF, Defendant Friend saw him, diagnosed his condition as a minor rash and determined that it was a non-emergency. (Compl. at 6.) The next day, Plaintiff returned to the medical unit and another nurse checked his vital signs and he was provided with benadryl for his symptoms. (*Id*. at 4.) On his third presentation to the FCF clinic, Plaintiff was provided a bed in the unit, a cortazone shot and pain medication. (*Id*. at 6.) There are no facts supporting Plaintiff's conclusory

11

allegations that, while at FCF, Defendant Friend in any way disregarded Plaintiff's medical needs, serious or not serious. According to the facts in the Complaint, Plaintiff was provided with progressively increased treatment which culminated in a visit from the Medical Director and transfer to a more complete medical facility.

Claim Two against Defendant Morgan and Claim Three against Defendant Martinez appear to be based on Plaintiff's assertion that Morgan and Martinez effectuated his transfer to TCF and, once there, he was not treated during the 24 hours he was on suicide watch. The Complaint contains numerous factual allegations, however, showing Plaintiff received medical care both before and after he was transferred to TCF. Plaintiff states that after he was transferred to TCF, officials conducted a physical evaluation (*id.* at 5), did a blood analysis (*id.*), and diagnosed his condition as an allergic reaction to food. (*Id.* at 6.) He also alleges he was given "a physc. [sic] evaluation" and was prescribed medication. (*Id.* at 5.) Again, there are no factual allegations supporting Plaintiff's allegation that Defendants Morgan or Martinez disregarded Plaintiff's medical needs.

Fairly interpreted the Complaint alleges that Plaintiff was not given what <u>he considered</u> to be proper care in spite of ample facts showing he was provided with a substantial amount of medical care at both institutions. Plaintiff's claims against Defendants Friend, Morgan, and Martinez amount to no more than a disagreement concerning the course of treatment rendered by his attending medical professionals. However, such a difference of opinion "does not give rise to a claim for deliberate indifference to serious medical needs." *Perkins v. Kan. Dep't of Corr.*, 165 F .3d 803, 811 (10th Cir. 1999); *see also Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993)

("[a] difference of opinion does not support a claim of cruel and unusual punishment"); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (the Constitution does not guarantee a prisoner the treatment of his choice) (citations omitted); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation); *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) ("The prisoner's right is to medical care—not to the type or scope of medical care which he personally desires.") (internal quotation marks and citation omitted).

Plaintiff also appears to allege that his diagnosis of food allergy was incorrect and that he may have been suffering from his earlier treatment for a staph infection. (Compl. at 3.) However, Plaintiff fairs no better under a theory of incorrect diagnosis. "A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins*, 165 F.3d at 811 (citing *Estelle*, 429 U.S. at 105–06).

Plaintiff's failure to allege facts sufficient to plausibly establish the subjective prong of the deliberate indifference test is fatal to Plaintiff's claims against Defendants Friend, Morgan, and Martinez.

### IV.    *Qualified Immunity*

Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When analyzing the issue of qualified immunity, the court must determine (1) whether the plaintiff has sufficiently alleged violation of

a statutory or constitutional right; and (2) whether the right was clearly established at the time of the violation. *Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009). Courts are permitted to exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Id.* at 818. The plaintiff bears a heavy two-part burden in establishing that the defendant violated clearly established law. *Teague v. Overton*, 15 F. App'x 597, 600 (10th Cir. 2001). "When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

Plaintiff has failed to sufficiently allege a violation of a statutory or constitutional right by any defendant. Therefore, Defendants Friend, Morgan, and Martinez are entitled to qualified immunity in their individual capacities.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that Defendant Morgan and Defendant Martinez's "Motion to Dismiss Plaintiff's Complaint (Doc. 4)" (Doc. No. 25) and the "Motion to Dismiss Plaintiff's Complaint (Doc. 4) on Behalf of Defendant Amy Friend" (Doc. No. 30) be **GRANTED** and that this case be **DISMISSED** with prejudice in its entirety.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A

general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059–60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections,

plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 30th day of December, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge